(No. 85-CC-2244-)

CHARLES MARTIN, Claimant, *v*. THE STATE OF ILLINOIS, Respondent.

*Opinion filed August 25, 1987.*

*Order filed November 2, 1987.*

*Order filed April 28, 1988.*

CHARLES MARTIN, *pro se*, for Claimant.

NEIL F. HARTIGAN, Attorney General (JOHN BUCKLEY, Assistant Attorney General, of counsel), for Respondent.

## OPINION

Raucci, J.

This is a claim brought by Claimant, Charles Martin, now a resident of Dixon Correctional Center, for personal injuries sustained while he was a resident of Logan Correctional Center, for alleged lack of medical attention after the incident, and for wrongful transfer from Logan Correctional Center to Menard Correctional Center.

The record demonstrates that the medical authorities at Logan Correctional Center considered Claimant to be mentally ill. However correct this diagnosis may have been, it has no bearing on certain aspects of Claimant's claim. Claimant has filed numerous pleadings in this case, some of them somewhat unintelligible. He filed a related action in the Federal District Court for the Central District of Illinois which was dismissed by order of that court entered on January 24, 1985, which found that Claimant's grievances were not actionable under 42 U.S.C. 1983, but possibly could be heard in a State court.

Claimant makes essentially four allegations of wrongdoing on the part of the Respondent:

A. That on April 13, 1984, at Logan Correctional Center, Captain Hockaday, while "under the influence of liquor or dope," deliberately slammed a heavy door on Claimant, knocking him to the floor and causing him to break a rib.

B. That the officer on duty refused to let Claimant have emergency medical care.

C. "Dr. Trapp, 4/16/84, deliberately made out a medical report that nothing was broken, and no serious injury present. No treatment was given for broken rib."

D. "Dr. Capler who received this report and in spite of my continued complaint of hard breathing with pain in chest and unable to sleep, treated my problem as mental hallucinations and prescription for mental disorder, had me shipped to Menard Mental Center, being assisted by Dr. Levie, 4/16/84 & 4/17/84."

While Claimant has filed a variety of pleadings, the allegations appearing throughout are basically as set forth above, except that in a pleading filed on July 19, 1985, Claimant alleges various acts of misconduct on the part of prison officials at Menard after he was transferred to Menard.

Claimant's testimony was that on April 13, 1984, at about two o'clock in the afternoon he was standing in the doorway of a recreation room at Logan Correctional Center talking to Captain Hockaday concerning some items of Claimant's personal property alleged by Claimant to have been misplaced or stolen in the receiving department.

The officer was standing in the hallway outside the recreation room. The doorway was fitted with a heavy, solid steel door which opened inwards into the recreation room and was open at the time. The officer, apparently wishing to terminate the conversation and without asking Claimant to move or otherwise warn him of his intentions, pulled the door shut while Claimant was still standing in the doorway. The force of being hit by the door knocked Claimant over and into a large ash stand causing him to break his right eighth rib. Claimant testified that the officer's speech was slurred.

Claimant was in pain from the blow and asked the officer in charge of the recreation room for medical attention. But the officer told him it was too late and that he could go to sick call in the morning.

The record contains photocopies of the affidavits of two inmates—James Johnson and Bellamy—corroborating Claimant's account of the incident. The record also contains a radiological report dated 4/16/84 (typed 4/19/84) showing a fracture of the right eighth rib.

A photocopy of a resident injury report, signed by C. Glenn, R.N., and made part of the record, shows that Claimant appeared at sick call at 7:30 a.m. on April 14, 1984, alleging that Captain Hockaday had closed a steel door on his right chest and right elbow, and that he was not allowed to see a nurse. The nurse found no marks, bruises, or swellings and full range of motion of all extremities, and did not recommend any treatment.

Officer Hockaday and Officer Merreighn (the officer in charge of the recreation room) thereupon filed disciplinary charges against Claimant alleging that the incident never occurred and Claimant was placed in segregation.

Claimant's medical progress notes show that on April 15, 1984, medical personnel visited Claimant in segregation and although Claimant complained that he was hurting terribly no injuries were noted.

On April 16, 1984, he was seen in the clinic by Dr. Trapp. His medical note is reproduced below:

"4/16/84
M.D. NOTE
O: Is examined this morning with a complaint of pain in the right chest and some slight pain of the right elbow following an injury in which a door was slammed on him he states. The pain in the elbow is almost all gone he states. He states the pain in the ribs is very minimal although a deep breath seems to cause him some distress.

P: W/U Rib cage
Rx X-Rays. Not that I think anything is broken, but in case of any medical/legal problem. No additional treatment is recommended.

Examination reveals there is
no tenderness and there is
complete ROM and normal sensa-
tion in the entire right arm.
The rib cage may be minimally
sore; lungs sound clear
throughout. Pressure on the
ribs cause minimal distress.

A: Minimal contusion of the
right chest.

Robert N. Trapp, M.D./bmm"

The X ray taken April 16, 1984 on Dr. Trapp's order showed that Claimant's right eighth rib was in fact broken.

The preponderance of the evidence is that Captain Hockaday wilfully or at least negligently did in fact slam the door on Claimant causing Claimant to suffer a broken right rib, and that the officer in charge of the recreation room refused to let Claimant have medical attention. It is also the preponderance of the evidence that Claimant was wrongfully put in segregation on the basis of the false disciplinary reports filed against him by Officers Hockaday and Merreighn denying that the incident occurred.

It is further true that in effect he at no time received treatment for his broken rib, even though he was complaining of pain, because there appeared to be no visible exterior indication of an injury.

On the state of the record we cannot draw the conclusion that the sole reason Claimant was transferred from Logan to Menard was because the medical personnel at Logan misdiagnosed his condition as mental. The doctor's note of April 17, 1984, would indicate that Claimant did in fact have severe psychological problems. The mishandling of the April 13, 1984, incident followed by Claimant being wrongfully put in segregation probably did not help his mental condition.

Because Claimant received no medical treatment for his broken rib he suffered two or three days of pain. While in segregation he tied his belt around his rib cage to alleviate the pain (Tr. 17, 19). By the time he was taken out of segregation and transferred to Menard the pain had stopped.

Considering the physical injury wrongfully inflicted upon Claimant, the refusal of the officer in charge of the recreation room to let him have emergency medical treatment, the failure to treat the broken rib, the pain and suffering he endured, we award Claimant $750.00.

It is therefore ordered, adjudged and decreed that Claimant be awarded $750.00 in full and complete satisfaction of this claim.

## ORDER

RAUCCI, J.

This cause coming on to be heard on Claimant's "Written Request or Notice of New Trial (Appeal)," the Court having examined all the documents filed by Claimant and having reviewed the record, and being fully advised in the premises,

It is ordered that the "Written Request or Notice of New Trial (Appeal)" is denied.

## ORDER

RAUCCI, J.

This cause coming on to be heard on the Claimant's "Appeal" and the Court being fully advised in the premises finds that we have previously denied Claimant's request for a new trial or appeal, it is hereby ordered that the Claimant's appeal is denied. The Clerk is

directed to not accept any further post-trial motions in this case.